**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **JE'LEAH SWAN,** | Case No. 3:21-cv-111-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MISS BEAU MONDE, INC.,** | |
| Defendant. | |

Beth Ann Creighton, CREIGHTON & ROSE, PC, Powers Building, 65 SW Yamhill Street, Suite 300, Portland, OR 97204. Of Attorneys for Plaintiff.

Thomas E. McDermott and Matthew N. Miller, LINDSAY HART, LLP, 1300 SW Fifth Avenue, Suite 3400, Portland, OR 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In 1996, the United States Supreme Court recognized a psychotherapist-patient privilege under federal common law but left the development of the "contours" of that privilege to future cases, based on "reason and experience." *Jaffee v. Redmond*, 518 U.S. 1, 8, 18 (1996). In the motion now before the Court, Defendant seeks an order compelling disclosure of Plaintiff's confidential communications with her psychotherapists. To resolve this motion, the Court must decide whether a plaintiff in federal court asserting a claim under federal law waives the psychotherapist-patient privilege merely by requesting damages for emotional distress. Neither

the Supreme Court nor the Ninth Circuit has yet answered this question, and the courts that have considered it are split. Some courts follow a "broad approach" to waiver, concluding that a plaintiff waives the privilege merely by requesting damages for emotional distress. Other courts employ a "middle approach," under which there is no waiver if a plaintiff seeks only "garden variety" emotional distress damages and does not allege a specific psychiatric injury or "unusually severe" emotional distress. Still, other courts adopt a "narrow approach," holding that a plaintiff does not waive the psychotherapist-patient privilege unless the plaintiff discloses an intent to call a psychotherapist as an expert witness at trial and place privileged communications at issue or otherwise attempts unfairly to use the privilege as both a sword and a shield. For the reasons stated below, the Court concludes that the narrow approach best reflects the principles underlying *Jaffee*.

## STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides, in part, that parties in a federal civil lawsuit "may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). This rule also states that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Although this rule permits broad discovery, subject to principles of proportionality not relevant here, it expressly exempts privileged communications.

Rule 501 of the Federal Rules of Evidence generally addresses testimonial privileges. That rule provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;

    • a federal statute; or

    • rules prescribed by the Supreme Court.

    But in a civil case, state law governs privilege regarding a claim or
    defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.[1] Thus, for claims or defenses asserted in federal court for which federal law

supplies the rule of decision, federal common law generally governs a claim of privilege.[2]

    In addition, in the Ninth Circuit, the party asserting a privilege has the burden of showing

that the privilege applies and has not been waived. *Weil v. Inv./Indicators, Research & Mgmt.,*

*Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving

that the attorney-client privilege applies rests not with the party contesting the privilege, but with

the party asserting it. One of the elements that the asserting party must prove is that it has not

waived the privilege.") (citations omitted); *see also* 3 Jack B. Weinstein & Margaret A. Berger,

---

[1] The only privilege expressly discussed in the Federal Rules of Evidence is the attorney-client privilege. *See* Fed. R. Evid. 502. "In 1972, the Chief Justice transmitted to Congress proposed Rules of Evidence for United States Courts and Magistrates (hereinafter Proposed Rules). The Proposed Rules defined nine specific testimonial privileges, including a psychotherapist-patient privilege, and indicated that these were to be the exclusive privileges absent constitutional mandate, Act of Congress, or revision of the Rules. . . . Congress rejected this recommendation in favor of Rule 501's general mandate." *Jaffee*, 518 U.S. at 8 n.7.

[2] Most courts hold that when federal and state law claims are joined in the same action, privilege issues are resolved under federal law. *See, e.g.*, *Hancock v. Hobbs*, 967 F.2d 462, 466-67 (11th Cir. 1992) (noting that "it also would be impractical to apply two different rules of privilege to the same evidence before a single jury"); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1159 (9th Cir. 2016) ("Because, here, at the time the parties engaged in mediation, their negotiations concerned (and the mediated settlement settled) both federal and state law claims, the federal law of privilege applies. Accordingly, the district court erred in applying California privilege law to resolve this dispute."). The Supreme Court, however, has not resolved this question. *See Jaffee*, 518 U.S. at 15 n.15 ("We note that there is disagreement concerning the proper rule in cases such as this in which both federal and state claims are asserted in federal court and relevant evidence would be privileged under state law but not under federal law. . . . Because the parties do not raise this question and our resolution of the case does not depend on it, we express no opinion on the matter.").

WEINSTEIN'S FEDERAL EVIDENCE § 503.20[4] (Mark S. Brodin, ed., 2d ed. 2021) ("The party seeking to invoke the attorney-client privilege also must show that it applies to a particular communication and has not been waived.").

## BACKGROUND

### A.  Plaintiff's Complaint[3]

Plaintiff Je'Leah Swan (Swan) is an African American woman. Defendant Miss Beau Monde, Inc. (MBM) operates a cosmetology school in Portland, Oregon under the business names "Beau Monde Academy of Barbering and Cosmetology" and "Beau Monde Academy of Cosmetology." Swan, a former student at MBM, alleges that MBM receives federal financial assistance. In this lawsuit, Swan alleges, among other claims, sexual harassment and retaliation, racial discrimination, and disability discrimination, in violation of federal law. Swan contends that because of MBM's discriminatory and harassing treatment, she "has suffered personal injury, anxiety, depression, and a loss of her passion for cosmetology." Compl. ¶ 42. As relief, Swan seeks economic, noneconomic, and punitive damages in an amount to be determined by a jury.

Shortly after Swan began receiving instruction at MBM, Swan asked MBM's owners if MBM would purchase an ethnically Black mannequin so she could practice on hair that was like the hair of Black customers. *Id*. ¶ 12. MBM responded that it would not purchase a Black mannequin and that if Swan wanted to practice on a Black mannequin, she could buy one herself. *Id*. White students, however, were not told to purchase mannequins with ethnically white hair. *Id*.

---

[3] For purposes of the pending motion, the Court accepts as true all well-pleaded facts alleged in Swan's Complaint (ECF 1).

From time to time, MBM pulled Swan from her classes to work on the hair of Black customers in MBM's salon. *Id*. ¶ 13. White students, however, were not asked to leave class to work on Black customers' hair. *Id*. In April 2018, MBM advanced Swan to "practical skills" learning in MBM's salon. *Id*. ¶ 14. There, Swan was instructed by Dan Pettingle (Pettingle), a hair colorist. *Id*. A few days into Swan's practical skills learning, Pettingle told Swan and her classmates that he previously was a lingerie photographer and had worked with "pretty models." *Id*. ¶ 15. Pettingle's tone of voice made Swan uncomfortable. *Id*. At about the same time, Swan's classmates warned her that Pettingle had made inappropriate comments about their bodies and clothing and had touched them in ways that made them feel uncomfortable. *Id*. ¶ 16.

Pettingle took a special interest in Swan, following her around the salon and making sexual comments to her. *Id*. ¶ 17. On several occasions, Pettingle touched Swan's breast while grabbing a blow dryer from under her arm. *Id*. In response to Pettingle's advances, Swan told him that he made her feel uncomfortable and asked him to stop. *Id*. From April 2018 to March 2019, Swan and other students complained to MBM's owners and management about how Pettingle treated them. *Id*. ¶ 18. One student dropped out of the program because of how Pettingle had treated her. *Id*. MBM, however, failed to stop Pettingle's improper comments and conduct during this time and allowed him to continue teaching the students who complained about his sexual harassment and discrimination. *Id*. Pettingle continued to subject Swan to harassment. *Id*. ¶¶ 19-25.

On several occasions, Swan complained verbally to MBM management about Pettingle's behavior. *Id*. ¶¶ 17-19, 23. Swan also sent a written complaint to MBM about Pettingle's physical assault of her, his continued sexual harassment of her, and his discrimination against her. *Id.* ¶ 26. Swan also requested an in-person meeting with the owners of MBM to discuss

Swan's complaints about Pettingle. *Id*. Soon thereafter, Swan met with the two owners of MBM, and she requested that MBM ensure that Swan and her classmates were safe and would no longer be harassed by Pettingle. *Id*. ¶ 27. MBM agreed to terminate Pettingle's employment but said that doing so would cost MBM a "lot of money." *Id*.

After MBM ended Pettingle's employment, the owners of MBM called Swan into their office to chastise her for small errors she had made, which Swan contends were common mistakes made by beginning students. *Id*. ¶ 28. MBM's owners also entered negative marks about Swan in her school file. *Id*. Swan alleges that these meetings caused her great anxiety. *Id*.

Swan also alleges that in late winter or early spring of 2019, she began seeing a therapist for the emotional distress she was suffering because of MBM and Pettingle's discriminatory and harassing treatment of her. *Id*. ¶ 31. According to Swan, she was diagnosed with anxiety and depression. *Id*. In July 2019, Swan sent emails to MBM informing MBM of Swan's diagnoses. *Id*. ¶ 32.

On July 9, 2019, Swan suffered an anxiety attack before school. *Id*. ¶ 33. She contacted MBM to inform her instructors that she was running late because of her anxiety attack. *Id*. When Swan arrived at school, one of the owners of MBM told Swan that if she was late again, she would be expelled from the program. *Id.* Swan then described her medical condition and offered to provide a doctor's note. *Id.* MBM's owners replied that Swan's medical condition was not a valid excuse because Swan did not have that condition when she began her program at MBM. *Id.* Shortly thereafter, Swan filed a written complaint with MBM, detailing these comments. *Id.* On July 23, 2019, Swan provided her advisor at MBM with two doctor's notes, stating that Swan suffered from a panic disorder that required MBM allowing Swan to be up to 90 minutes late to school twice a week and receiving at least 48-hours' notice before being called into any one-on-

one meetings with MBM's owners or management. *Id.* ¶34. MBM did not respond to Swan's request for these accommodations. *Id.* ¶ 35.

On August 8, 2019, Swan tried to call her instructors to say that she was running late due to her medical condition. *Id.* ¶ 36. After calling twice without any answer, Swan left a voicemail message. *Id.* When Swan arrived at school, one of the owners of MBM told Swan that if she were late again, she would be removed from the program. *Id.* ¶ 37. Swan responded that she was late due to her medical condition, that she previously had provided MBM with two doctor's notes, and that she had twice emailed MBM describing that condition. *Id.* Swan's advisor confirmed to the owner that notes from Swan's doctor were in Swan's file. *Id.* ¶ 37. The owner reiterated that Swan's medical condition was not a valid excuse because Swan did not have that condition when she began the program. *Id.* The owner added that she had not seen the medical notes and did not often check her email. *Id.*

MBM's owner then asked Swan for an immediate one-on-one meeting. *Id.* ¶ 38. Swan replied that she did not feel comfortable meeting at that time because she could feel the beginning of a panic attack. *Id.* Later that day, Swan filled out an early dismissal form, asking to leave at 2:30 p.m. *Id.* ¶ 39. Swan gave the completed form to her advisor and told MBM's owner that she needed to leave early to attend an "emergency therapy session." *Id.* ¶ 39. The owner responded, "I'm not approving anything today." *Id.* A few days later, Swan sent a written complaint to MBM, detailing her medical condition, the times that she had informed MBM about her medical condition, and what had occurred on August 8, 2019. *Id.* ¶ 40. In that complaint, Swan also said that she did not believe that MBM was taking her health seriously. *Id.* Swan successfully graduated from MBM's program on September 11, 2019. *Id.* ¶ 41.

**B.  Defendant's Motion to Compel**

In Defendant's Motion to Compel Health Records (ECF 10), MBM seeks discovery of

Swan's doctor records and counseling records and related information about the mental

conditions that Swan alleges were caused by MBM's conduct. Specifically, MBM seeks:

> 1.  a response by Plaintiff to Interrogatory No. 17 and Requests for Production
> Nos. 2 and 4 regarding health care professionals with whom Plaintiff consulted or
> sought treatment for any of the injuries that Plaintiff's Complaint alleges were
> caused by Defendant;
>
> 2.  leave to issue subpoenas to Providence [Medical Group] pursuant to 45 CFR
> § 164.512(e)(1) for two health care providers whom Plaintiff disclosed to
> Defendant; and
>
> 3.  a privilege log identifying an any documents withheld by Plaintiff on the
> ground that they are sufficiently attenuated from her claims to fall outside of
> Plaintiff's waiver.

*See* ECF 10 at 2.

Defendant's Interrogatory No. 17 states: "Identify all healthcare professionals, including

without limitation physicians, psychiatrists, psychologists, therapists, social workers,

acupuncturists, chiropractors, physician assistants, nurses, occupational therapists, and any other

healthcare professional with whom you consulted or from whom you received treatment relating

to any injuries you allegedly sustained as a result of allegations in the Complaint. If no treatment

was provided for any claimed injury, please state so." ECF 10 at 3. Plaintiff responded: "Plaintiff

objects to this request to the extent it requires the disclosure of information protected by the

attorney-client and/or work-product privileges and by the doctor-patient and/or psychiatrist

privileges." *Id*.

Defendant's Request for Production No. 2 seeks: "Complete copies of Plaintiff's medical

records which relate in any way to the injuries or conditions for which recovery is sought in this

lawsuit from all physicians or other healthcare providers who have treated, examined, or consulted with Plaintiff." *Id*. Plaintiff responded:

> Plaintiff objects to this request as requiring the production of documents protected by the attorney-client and/or work-product privileges, by the doctor-patient and/or psychiatrist/counselor-patient privileges, and/or privacy protection act and/or that some of the documents sought may contain highly personal information not relevant to this lawsuit. Plaintiff further objects that the requested documentation is vague, overly broad, not relevant, will not lead to the discovery of admissible evidence, is unduly burdensome, not limited in time or scope, not formulated with enough specificity and that it seeks to unduly invade plaintiff's privacy.

*Id*.

Regarding Defendant's Request for Production No. 2, Plaintiff did not comply with Rule 34(b)(2)(C) of the Federal Rules of Civil Procedure. That rule states, in relevant part: "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). The Court now orders Plaintiff to comply with Rule 34(b)(2)(C) not later than 28 days from the date of this Opinion and Order.

Further, Defendant did not provide the Court with either the text of Defendant's Request for Production No. 4 or Plaintiff's response. Both are required in a motion to compel. *See* LR 37-1. Thus, Defendant's motion to compel production regarding Request No. 4 is denied.

## DISCUSSION

### A.  The Supreme Court's Decision in *Jaffee*

In *Jaffee*, a police officer, responding to a fight in progress, shot and killed a man. Afterward, the officer involved received extensive counseling from a licensed clinical social worker. *Jaffee*, 518 U.S. at 3-4. The decedent's estate brought a federal civil rights lawsuit against the officer and her employer. During pretrial discovery, the plaintiff sought access to the social worker's notes concerning the counseling sessions for use in cross-examining the officer.

The officer and her counselor refused to turn over the notes, notwithstanding the court's order to do so. *Id*. at 5. At trial, the judge instructed the jury that the refusal to turn over the notes had no legal justification and that the jury may presume that the contents of the notes would have been unfavorable to the defendants. The jury awarded damages to the plaintiff, but the Seventh Circuit reversed and remanded for a new trial. *Id*. at 6-7.

Noting that all 50 States had adopted some form of the psychotherapist-patient privilege, the Seventh Circuit recognized such a privilege under federal common law. The Seventh Circuit, however, "qualified its recognition of the privilege by stating that it would not apply if, in the interests of justice, the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests." *Id*. at 7 (quotation marks omitted). The Supreme Court affirmed but rejected the Seventh Circuit's balancing approach.

The Supreme Court explained that "Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting common law principles in the light of reason and experience." *Id.* at 8 (quotation marks and ellipses omitted). The Supreme Court added:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply. For more than three centuries it has now been recognized as a fundamental maxim that the public has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule. Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.

*Jaffee*, 518 U.S. at 9 (citations, quotation marks, and ellipses omitted).

The Supreme Court continued:

> Like the spousal and attorney-client privileges, the
> psychotherapist-patient privilege is rooted in the imperative need
> for confidence and trust. Treatment by a physician for physical
> ailments can often proceed successfully on the basis of a physical
> examination, objective information supplied by the patient, and the
> results of diagnostic tests. Effective psychotherapy, by contrast,
> depends upon an atmosphere of confidence and trust in which the
> patient is willing to make a frank and complete disclosure of facts,
> emotions, memories, and fears. Because of the sensitive nature of
> the problems for which individuals consult psychotherapists,
> disclosure of confidential communications made during counseling
> sessions may cause embarrassment or disgrace. For this reason, the
> mere possibility of disclosure may impede development of the
> confidential relationship necessary for successful treatment.

*Id.* at 10 (citation, quotation marks, and footnote omitted).

The Court in *Jaffee* then explained that "[b]y protecting confidential communications between a psychotherapist and her patient from involuntary disclosure, the proposed privilege thus serves important private interests." *Id*. at 11. In addition, "[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id*. (footnote omitted).

The Supreme Court further observed:

> In contrast to the significant public and private interests supporting
> recognition of the privilege, the likely evidentiary benefit that
> would result from the denial of the privilege is modest. If the
> privilege were rejected, confidential conversations between
> psychotherapists and their patients would surely be chilled,
> particularly when it is obvious that the circumstances that give rise
> to the need for treatment will probably result in litigation. Without
> a privilege, much of the desirable evidence to which litigants such
> as petitioner seek access—for example, admissions against interest
> by a party—is unlikely to come into being. This unspoken
> "evidence" will therefore serve no greater truth-seeking function
> than if it had been spoken and privileged.

*Id*. at 11-12. The Court also observed that "[a]t the outset of their relationship, the ethical therapist must disclose to the patient the relevant limits on confidentiality." *Id*. at 13 n.12 (quotation marks omitted).

For these reasons, the Supreme Court held "that *confidential communications* between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence" and that "[t]he reasons for recognizing a privilege for treatment by psychiatrists and psychologists apply with equal force to treatment by a clinical social worker." *Id*. at 15 (emphasis added). The Court further stated that "[l]ike other testimonial privileges, the patient may of course waive the protection." *Id*. at 15 n.14.

The Supreme Court, however, disagreed with the Seventh Circuit and rejected any type of balancing test. The Court explained:

> We part company with the Court of Appeals on a separate point. *We reject the balancing component of the privilege implemented by that court and a small number of States*. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn*, if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. *An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all*."

*Id*. at 17-18 (emphases added) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)). The Court then concluded by noting that, "[b]ecause this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would govern all conceivable future questions in this area." *Id*. at 18 (quotation marks omitted).

**B.  Terminology Clarified: Exceptions and Waivers (Express and Implied)**

Federal and state courts have held that the psychotherapist-patient privilege, as with other privileges, may be subject both to exceptions and waivers. Under federal law, exceptions to a testimonial privilege generally are based on the *content* of the communication. For example, "the psychotherapist-patient privilege, like the attorney-client privilege, is subject to a crime-fraud exception." *In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 79 (1st Cir. 1999).[4] Waiver, on the other hand, at least in many federal cases, generally refers to an intentional and voluntary act of *disclosure* of a confidential communication or, at least, an intentional and voluntary act that places the communication "in issue." *See In re Sims*, 534 F.3d 117, 136 (2d Cir. 2008) (reversing district court's order of disclosure and noting that "nothing in the record here suggests that Sims made a knowing election to waive his psychotherapist-patient privilege").

As explained in one leading commentary, "[t]he most obvious kind of waiver is voluntary disclosure by the patient where the disclosure is not itself privileged[.]" 2 Christopher B. Mueller and Laird C. Kirkpatrick, FEDERAL EVIDENCE § 5:43 at 781 (4th ed. 2013). That treatise continues:

> Calling the therapist as a witness does not by itself waive a claim of privilege, for the simple reason that the therapist might testify to points unrelated to privileged communications. A privilege holder who adduces testimony that discloses or rests on such communications does waive the privilege, however, and the same result obtains if an adverse party call the therapist and adduces

---

[4] Whether the psychotherapist-patient privilege also is subject to a "dangerous patient" exception is more controversial. *Compare United States v. Glass*, 133 F.3d 1356, 1359 (10th Cir. 1998) (holding that there may be an exception to the psychotherapist-privilege privilege when "disclosure was the only means of averting harm") *with United States v. Chase*, 340 F.3d 978, 991-92 (9th Cir. 2003) (en banc) (declining to recognize a dangerous-patient exception to the federal psychotherapist-patient privilege).

> such testimony, unless the patient objects (or the therapist objects
> on the patient's behalf).

*Id*. at 781-82 (footnotes omitted); *see also* Edward J. Imwinkelried, THE NEW WIGMORE

§ 6.12.4.c(4) (2002) ("mere act of calling" therapist or other person bound by privilege "does not

effect a waiver," but waiver occurs if holder "elicits testimony expressly or impliedly disclosing

the content of a confidential communication").

Courts also have recognized that an implied waiver may be found when the privilege

holder asserts a claim that "in fairness" requires examination of protected communications. *See*

*In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (quotation marks and emphasis

omitted). "[F]airness considerations arise when the party attempts to use the privilege both as a

shield and a sword. In other words, a party cannot partially disclose privileged communications

or affirmatively rely on privileged communications to support its claim or defense and then

shield the underlying communications from scrutiny by the opposing party." *Id*. "The

quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby

deemed to have waived his [attorney-client] privilege with respect to the advice that he

received." *Id*. at 182-83 (quotation marks omitted).

One particularly controversial application of this fairness principle arises when a plaintiff

alleges that a defendant's wrongful conduct has caused the plaintiff to suffer emotional distress

and the plaintiff seeks to recover noneconomic damages. Some courts have concluded that

merely filing a lawsuit that seeks emotional distress damages is enough to place the privileged

communications at issue, resulting in an "implied" waiver of the psychotherapist-patient

privilege.[5] This approach is generally referred to as a "broad" implied waiver, or simply a broad

---

[5] In many state codifications of the psychotherapist-patient privilege, an implied waiver
based on the filing of a lawsuit that seeks emotional distress damages (either with or without
more) is often referred to as an "exception" to the privilege, rather than as a "waiver" of the

waiver. A broad waiver is distinct from a narrow waiver. Some cases also follow a middle

approach. The Court turns to these distinctions next and then considers which of these three

approaches best follows the principles underlying *Jaffee*.

## C. Broad, Narrow, and Middle Approaches to Implied Waiver

### 1. The three approaches explained

One of the leading district court decisions in the Ninth Circuit adopting the broad

approach to waiver is *Doe v. City of Chula Vista*, 196 F.R.D. 562 (S.D. Cal. 1999) (*Chula*

*Vista*).[6] In that case, the district court rejected a magistrate judge's adoption of the narrow

approach, explaining:

> The courts are divided on the circumstances in which a patient
> waives her privilege by bringing a lawsuit. Both lines of cases
> attempt to honor the policy concerns expressed in *Jaffee*. All courts
> agree that a patient who sues the therapist for malpractice waives
> the privilege. The cases discussed below grapple with the more
> difficult question of how a plaintiff may waive the privilege by
> placing her mental condition in issue.
>
> \*    \*    \*
>
> Some courts have held that a plaintiff waives her psychotherapist
> privilege by alleging in her complaint that she suffered "emotional

privilege. *See generally* Deirdre M. Smith, *An Uncertain Privilege: Implied Waiver and the Evisceration of the Psychotherapist-Patient Privilege in the Federal Courts*, 58 DEPAUL L. REV. 79, 102-106 (2008) (hereinafter Smith, *An Uncertain Privilege*). Indeed, many state legislatures refer to this exception as the "patient-litigant" exception, whereas most federal courts refer to this concept as an "in issue" or "at issue" waiver. *Id*. at 102. Some states, however, do not use the terminology of either "exception" or "waiver" but simply refer to a "limitation" of the privilege. Oregon state law, for example, follows this approach. *See* Or. Rev. Stat. § 40.230(4)(b)(A) (including in a "nonexclusive list of limits" on the psychotherapist-patient privilege "communications relevant to an issue of the mental or emotional condition of the patent . . . [i]n any proceeding in which the patient relies upon the condition as an element of the patient's claim or defense").

[6] The court in *Chula Vista* noted that *Sarko v. Penn-Del Directory Co*., 170 F.R.D. 127 (E.D. Penn. 1997), is the leading authority for the broad view of waiver. *Chula Vista*, 196 F.R.D. at 565.

distress" from the defendant's conduct and by seeking monetary
damages for that psychological injury.

\*    \*    \*

The court concludes that the Supreme Court would adopt the broad
view of waiver. The court finds it significant that the Supreme
Court specifically included an exception in its proposed standard
that the privilege does not protect communications concerning a
plaintiff's emotional condition if the patient relies upon the
condition as an element of her claim. Supreme Court
Standard 504(d)(3). The court concludes that a plaintiff who seeks
to recover for emotional distress damages is relying on her
emotional condition as an element of her claim.

*Chula Vista*, 196 F.R.D. at 565, 568.[7] The district court in *Chula Vista*, however, "acknowledges

that there is some support for the *narrow* view in the Supreme Court's *Jaffee* decision. The

Supreme Court expressed concern that communications with one's therapist could be chilled

'particularly when it is obvious that the circumstances that give rise to the need for treatment will

probably result in litigation.'" *Id.* at 569 (emphasis added) (quoting *Jaffee*, 518 U.S. at 12). The

district court concluded that the magistrate judge should review the plaintiff's medical history *in*

*camera* to determine "if, and to what extent, the evidence is relevant to [the plaintiff's] claim for

emotional distress damages" *Chula Vista*, 196 F.R.D. at 570.

One of the earliest leading cases under the narrow approach is *Vanderbilt v. Town of*

*Chilmark*, 174 F.R.D. 225 (D. Mass. 1997). As explained in *Vanderbilt*,

*Jaffee's* "no balancing" instruction drastically changes the waiver
formula. When a patient pleads emotional injury, she has not
explicitly waived the privilege. All she has done is make her
communication with her psychotherapist potentially relevant. That
evidence may be harmful, or helpful, to her case. *See Sax v.*
*Sax*, 136 F.R.D. 541, 542 (D. Mass. 1991) (stating that in attorney-
client privilege, "[t]he test is not whether the information which is

---

[7] As the Supreme Court noted in *Jaffee*, Congress *rejected* the Supreme Court's proposed
evidence Rule 504(d)(3). *See Jaffee*, at 8 n.7. The Supreme Court then left it to later cases to
develop the "contours" of the psychotherapist-patient privilege. *Id.* at 18.

> the subject of the privilege is 'relevant', the information is usually
> highly relevant.") After *Jaffee*, a court cannot force disclosure of
> that evidence solely because it may be extremely useful to the
> finder of fact. Giving weight to the usefulness of the evidence as a
> factor in a decision regarding the scope of the privilege would be a
> balancing exercise that was barred by *Jaffee*.

*Id.* at 229. Further, "the very nature of a privilege is that it prevents disclosure of information that

may be relevant in the case, in order to serve interests that are of over-arching importance."

*Hucko v. City of Oak Forest*, 185 F.R.D. 526, 530 (N.D. Ill. 1999). The court in *Hucko* added:

> Moreover, analyzing the "fairness" of whether to permit a claim of
> privilege or instead to deem it waived would promote uncertainty
> in the scope of the privilege, which is precisely what the Supreme
> Court sought to avoid by holding that the application of the
> psychotherapist-patient privilege would not be "contingent upon a
> trial judge's later evaluation of the relative importance of the
> patient's interest and privacy and evidentiary need for disclosure."

*Id.* (quoting *Jaffee*, 518 U.S. at 17).

One of the leading cases adopting the middle approach is *Ruhlmann v. Ulster County*

*Department of Social Services*, 194 F.R.D. 445 (N.D.N.Y. 2000). In that case, the court held that

when a plaintiff sought only "incidental" or "garden variety" emotional distress damages, the

plaintiff did not put his or her emotional condition at issue and thus did not waive the privilege.

*Id.* at 449-51; *see also Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 n.8 (D.N.J. 2000) ("Simply

put, where a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a

separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe

distress, that plaintiff has not placed his/her mental condition at issue to justify a waiver of the

psychotherapist-patient privilege.").

In *Fitzgerald v. Cassil*, 216 F.R.D. 632 (N.D. Cal. 2003), the district court thoughtfully

explained why it was rejecting both the broad approach and the middle approach in favor of the

narrow. Judge Edward Chen stated that the broad approach to waiver:

PAGE 17 – OPINION AND ORDER

is not necessary to achieve basic fairness to the defendant. While the privilege may bar access to medical records, the defendant may cross-examine the plaintiff, as was done in the instant case, about other stressors or contributing factors that may explain or have contributed to the alleged emotional distress. The occurrence and dates of any psychotherapy including that which occurred before the incident is not privileged and subject to discovery. *See Vanderbilt*, 174 F.R.D. at 230. The defendant can examine percipient witnesses or find other evidence to show, for example, that plaintiff's description of his or her distress is exaggerated. It may elicit from the plaintiff the fact that the plaintiff did not seek and obtain treatment or therapy for the alleged distress. These examples illustrate that the defendant has numerous avenues through which it can make its case without delving into the plaintiff's confidential communication with his or her therapist. . . . Finally, the defendant benefits by the guarantee that the plaintiff will not present expert evidence at trial.

*Id*. at 638.[8] Judge Chen also explained the deficiencies in the middle approach.

The middle ground approach is not sufficiently protective of the psychotherapist-patient privilege established in *Jaffee*. While a Rule 35(a) examination may compromise a litigant's privacy, waiver of the psychotherapist-patient privilege entails more than an invasion of privacy; it threatens access to treatment by breaking the "imperative need for confidence and trust" upon which psychotherapy is rooted.

*Id*. at 638-39 (quoting *Jaffee*, 518 U.S. at 10). Judge Chen also noted that "the use of a test for waiver that hinges on an after-the-fact judicial assessment of numerous qualitative factors introduces a risk of uncertainty that the Supreme Court in *Jaffee* sought to avoid." *Id*. at 639.

## 2. Out-of-circuit federal appellate decisions considered

As previously noted, the Ninth Circuit has not yet announced a rule in this area. The Seventh and Eighth Circuits, however, appear to follow the narrow approach, albeit without much explanation. The D.C. Circuit appears to reject the holdings of the Seventh and Eighth

---

[8] In *Fitzgerald*, the court noted that "Plaintiffs have stipulated that they will not affirmatively rely on any treating psychotherapist or other expert to prove the emotional distress damages suffered by Mr. Fitzgerald and Mr. Yu." 216 F.R.D. at 639.

Circuits, and the Second Circuit, while not directly addressing this point, quotes a decision from the Supreme Court that appears to undermine the position of the Seventh and Eighth Circuits.

In *Schoffstall v. Henderson*, 223 F.3d 818 (8th Cir. 2000), the plaintiff sued the United States Postal Service (USPS) for sex discrimination, retaliation, and sexual harassment, alleging emotional distress. She moved for protective relief to prevent the USPS from discovering certain information. The district court denied her motion, and later dismissed three of her claims as a discovery sanction. The district court also granted summary judgment to the defendant on the plaintiff's remaining claims. The Eighth Circuit affirmed. *Id*. at 821. Regarding the plaintiff's assertion of the psychotherapist-patient privilege, the Eighth Circuit, without substantive analysis, simply stated "we agree that by placing her medical condition at issue, Schoffstall waived the psychotherapist-patient privilege." *Id*. at 823.

In *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006) (*Oberweis*), the plaintiff was a high-school student hired as a part-time ice cream "scooper" at the defendant's store. The plaintiff sued under Title VII of the Civil Rights Act of 1964, with supplemental claims for battery, intentional infliction of emotional distress, and related common law wrongs, alleging that a shift supervisor at the store had harassed her sexually, culminating in sexual intercourse, for which he was prosecuted, convicted, and imprisoned. The district court granted summary judgment in favor of the defendant on the Title VII claim and declined to exercise supplemental jurisdiction of the plaintiff's remaining state claims. *Id*. at 707-08. The Seventh Circuit reversed, stating that although "the district judge terminated the case prematurely[,] . . . he was correct to allow the defendant access to the plaintiff's psychiatric records." *Id*. at 718. Citing the Eighth Circuit's decision in *Schoffstall*, the Seventh Circuit stated: "If a plaintiff by seeking damages for

emotional distress places his or her psychological state in issue, the defendant is entitled to

discover any records of that state." *Oberweis*, 456 F.3d at 718. The Court added:

> Rule 35 of the Federal Rules of Civil Procedure would entitle the
> defendant to demand that the plaintiff submit to a psychiatric
> examination, the results of which would be available for use by the
> defendant in discovery and at trial; there is no greater invasion of
> privacy by making existing records available to the defendant. The
> judge can seal the plaintiff's psychiatric records and limit their use
> in the trial (which is public) to the extent that the plaintiff's interest
> in privacy outweighs the probative value of the information
> contained in the records.

*Id*. (citations omitted).

In *Koch v. Cox*, 489 F.3d 384 (D.C. Cir. 2007), the D.C. Circuit discussed both the

Eighth Circuit's decision in *Schoffstall* and the Seventh Circuit's decision in *Oberweis*. In *Koch*,

an employee of Securities and Exchange Commission (SEC) sued the SEC, claiming violations

of the Civil Rights Act, the Americans with Disabilities Act, the Rehabilitation Act, and the Age

Discrimination in Employment Act. Among other claims, Koch alleged discrimination,

retaliation, and failure to accommodate his medical conditions. The district court denied Koch's

motion to quash the SEC's subpoena for confidential records of communications between Koch

and his psychoanalyst. *Id*. at 386-87. Koch appealed, and the D.C. Circuit reversed, holding that

Koch had abandoned any claim for damages for emotional stress, did not put his mental state in

issue by communicating about his heart medication, did not put his mental state in issue by

acknowledging his depression for which he was not seeking damages, and could revoke his

earlier waiver of privilege. *Id*. at 389-90. The D.C. Circuit noted that *Schoffstall* and *Oberweis*

"[b]oth were Title VII cases in which the plaintiff sought recovery for emotional distress." *Id*.

at 389. The D.C. Circuit then explained:

> We need not decide whether making a claim for emotional distress
> necessarily waives the privilege—there being no such claim in this
> case—in order to observe that an affirmative answer does not

follow from the *Schoffstall* court's analogy to the attorney-client
privilege. A client waives that privilege when he puts the attorney-
client relationship in issue—for example, by suing the attorney for
malpractice or by claiming he relied upon the attorney's
advice. . . . *By analogy, a patient would waive the psychotherapist-
patient privilege when he sues the therapist for malpractice or
relies upon the therapist's diagnoses or treatment in making or
defending a case*.

*Id*. (emphasis added) (citations omitted).

Finally, in *In re Sims*, 534 F.3d 117 (2d Cir. 2008), a state prisoner sued state corrections

officers under 42 U.S.C. § 1983, alleging excessive use of force. The district court entered a

discovery order requiring disclosure of the plaintiff's privileged psychiatric treatment records,

even though the plaintiff withdrew any claim for emotional injury damages "beyond those

ordinarily associated with a conventional claim for pain and suffering resulting from an assault

and physical injury" and renounced any reliance on evidence as to "his fears of corrections

officers." *Id*. at 120. The plaintiff sought a writ of mandamus, arguing that the district court had

erred in finding that the plaintiff had waived the psychotherapist-patient privilege and that there

would be unfairness to defendants in denying them access to the plaintiff's mental health

records. The Second Circuit granted the writ of mandamus and reversed the order for disclosure.

*Id*.

The Second Circuit noted that it "has yet to address the issue of waiver or forfeiture in the

context of the psychotherapist-patient privilege." *Id*. at 129. The Second Circuit then added:

Despite ruling that the psychotherapist-patient privilege should be
accorded strict protection, the *Jaffee* Court noted that "[l]ike other
testimonial privileges, the patient may of course waive the
protection." . . .

In dealing with testimonial privileges other than the
psychotherapist-patient privilege, we have held that a waiver may
be implied in circumstances where it is called for in the interests of
fairness. "[F]airness considerations arise when the party attempts
to use the privilege both as 'a shield and a sword.'" . . . "The

> quintessential example is the defendant who asserts an advice-of-
> counsel defense and is thereby deemed to have waived his
> [attorney-client] privilege with respect to the advice that he
> received." . . . Or the holder of the privilege may "assert[ ] a claim
> that in fairness requires examination of protected
> communications." . . .
>
> "[W]hether fairness requires disclosure . . . is best decided on a
> case-by-case basis and depends primarily on the specific context in
> which the privilege is asserted."

*Id*. at 131-32 (alternations in original) (citations omitted). The Second Circuit also stated: "The

Supreme Court has noted that '[p]arties may forfeit a privilege by exposing privileged evidence,

*but do not forfeit one merely by taking a position that the evidence might contradict*.'" *Id*. at 132

(quoting *United States v. Salerno*, 505 U.S. 317, 323 (1992)) (alternations in original) (emphasis

added).

### 3. The narrow approach adopted[9]

The Court concludes that the narrow approach to waiver best reflects the principles

underlying *Jaffee*. First, there are significant flaws and drawbacks to the broad approach to

---

[9] The Court recognizes that in adopting the narrow approach it is departing from several decisions in this district that have followed the middle approach when applying federal law. *See, e.g.*, *Sponer v. Equifax Info. Servs. LLC*, 2019 WL 1897465, at *2 (D. Or. Apr. 26, 2019) (Judge Hernández finding no waiver because the plaintiff "does not intend to introduce medical records . . . or rely on the testimony of a psychotherapist . . . does not seek damages for medical treatment . . . has not brought a claim for intentional or negligent infliction of emotional distress . . . [and] has alleged no more than garden variety emotional distress"); *Arjangrad v. JPMorgan Chase Bank, N.A.*, 2011 WL 13253324, at *6-7 (D. Or. Oct. 19, 2011) (Judge Papak stating that because the plaintiff alleges "emotional distress claims [that] are not garden variety" she "places her mental health at issue and waives the psychotherapist-patient privilege"); *Kinnee v. Shack, Inc.*, 2008 WL 1995458, at *5 (D. Or. May 6, 2008) (Judge Acosta noting that the plaintiff has "represented that she does not intend to rely on the testimony of a psychotherapist and that she does not claim any specific disabilities or medical conditions" caused by the defendant); *Gallagher v. Lincoln County*, 2008 WL 11515350, at *1 (D. Or. Feb. 28, 2008) (Judge Aiken denying the defendants' request for the plaintiff's psychological records because the plaintiff "requests damages only for general emotional distress . . . [and] does not allege intentional or negligent infliction of emotional distress, unusually severe emotional distress in light of her allegations, nor does she allege a specific psychiatric injury or disorder").

waiver. The broad approach risks interference with the objectives described in *Jaffee* and is unlikely to provide much evidentiary benefit. As the Supreme Court explained, effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears" and "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Jaffee*, 518 U.S. at 10. From this, it follows that if the privilege were rejected, "confidential conversations between psychotherapists and their patients would surely be chilled," *id*. at 11-12, because "[a]t the outset of their relationship, the ethical therapist must disclose to the patient the relevant limits on confidentiality." *Id*. at 13 n.12 (quotation marks omitted). This would diminish both the private interest of the person seeking treatment and the public interest. *See id.* at 11 ("The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance.").

Also, if a plaintiff failed to seek treatment (or even just failed candidly to disclose all relevant facts, emotions, memories, and fears), then no information useful in a lawsuit would likely be gathered by the psychotherapist. Thus, little or no information likely to assist the truth-seeking function of litigation would be lost. As the Supreme Court explained, "unspoken" evidence will "serve no greater truth-seeking function than if it had been spoken and privileged." *Id*. at 12.[10]

Further, the broad approach to waiver would force many victims of wrongful behavior that causes emotional distress to choose between seeking needed therapy (and thereby risk disclosure in court of personal and potentially embarrassing information) and foregoing (or

---

[10] As Judge Chen noted, a defendant still may cross-examine a plaintiff "about other stressors or contributing factors that may explain or have contributed to the alleged emotional distress." *Fitzgerald*, 216 F.R.D. at 638.

PAGE 23 – OPINION AND ORDER

abandoning) litigation (and thereby leave wrongs unvindicated and wrongdoers unreported and undeterred). "[P]articularly in civil rights cases, where Congress has placed much importance on litigants' access to the courts and the remedial nature of such suits," *Fitzgerald*, 216 F.R.D. at 639, requiring victims of wrongdoing to choose between obtaining treatment for emotional injuries caused by a wrong and obtaining a legal remedy for that wrong is inappropriate.

Second, there are also significant flaws and drawbacks to the middle approach to waiver. The term "garden variety emotional distress" is not a particularly useful metaphor or construct. Attempting to define the term, one court in this district explained:

> Courts in this circuit define garden variety emotional distress as ordinary or commonplace emotional distress, that which is simple or usual, or humiliation, embarrassment, anger, and other similar emotions. . . . Although some courts limit garden variety emotional distress to suffering experienced at the time of the alleged misconduct, others acknowledge garden variety emotional distress can encompass longer-lasting effects. . . . These disparate results can be explained by the well-accepted principle that whether a plaintiff's emotional response is "garden variety" depends on the harm to which that plaintiff was allegedly subjected.

*Arjangrad*, 2011 WL 13253324, at *7 (citations and quotation marks omitted). This, however, is not a definition likely to produce predictable and consistent outcomes. It is not a psychological term that can be found in a reference work like the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Orders*. Similarly, it is not a conclusion about which experts in the field can reliably opine. Instead, the middle approach simply asks judges to determine whether a plaintiff seeking emotional distress damages is asking for anything beyond "garden variety" damages, and this is not likely to yield predictable and consistent results.

Relatedly, some courts applying the middle approach to waiver ask whether a plaintiff alleges "unusually severe emotional distress" or a "specific psychiatric injury or disorder." *See Gallagher*, 2008 WL 11515350, at *1. Asking whether emotional injuries are "unusually

severe," however, likely results in answers that are no more predictable and consistent than asking whether an emotional injury is "garden variety." Further, as one commentator observed:

> [I]t is highly unusual for an individual receiving psychotherapy of some kind to not be diagnosed with a condition found in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. Insurance companies and publicly funded health care programs invariably require a clinical diagnosis in order to approve coverage for psychotherapy, and there are several diagnoses appropriate for temporary or mild conditions. Accordingly, a plaintiff's diagnosis with a mental disorder is not a sound basis for determining whether there is a waiver of the psychotherapist-patient privilege.

Smith, *An Uncertain Privilege*, at 113-14 (footnotes omitted).[11]

Moreover, any test that asks whether claimed emotional distress damages are unusually severe (*i.e.*, not "garden variety") and any test that asks about the amount of money that a plaintiff is seeking for emotional damages *before* deciding whether the psychotherapist-patient privilege has been waived risks morphing the inquiry into a fact-specific "balancing test." The Supreme Court in *Jaffee*, however, expressly rejected such a balancing test. "We reject the balancing component of the privilege implemented by [the Seventh Circuit below] and a small number of States." *Jaffee*, 518 U.S. at 17 (footnote omitted).

In addition, for the privilege to be effective, it must be predictable and not uncertain. The Supreme Court explained:

> As we explained in *Upjohn*, if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Id*. at 17-18 (quoting *Upjohn*, 449 U.S. at 393). Finally, as summarized by Professor Smith:

---

[11] *See* n.5, *supra*.

> This uncertainty renders the privilege nearly illusory, and by so doing, undermines an alternative instrumental rationale for the existence of the privilege: the privilege enables those who have sought mental health treatment to bring civil rights claims in federal court without concern that their treatment will necessarily become a central focus of discovery, and perhaps trial, over their objections. In order to serve this rationale, federal courts should approach questions of waiver of the psychotherapist-patient privilege in a manner that is consistent with the general concepts of waiver in the law and that provides all litigants meaningful protection from unnecessary intrusion into their mental health history.

Smith, *An Uncertain Privilege*, at 134-35 (footnotes omitted). For all these reasons, the Court will follow the narrow approach to waiver regarding the psychotherapist-patient privilege.[12]

### 4. How the narrow approach works in practice

Before employing the narrow approach to resolve the pending motion, it will be useful to summarize how the narrow approach generally works. First, the psychotherapist-patient privilege applies only to confidential communications between a person and his or her licensed psychotherapist or social worker for purposes of diagnosis or treatment. *See Jaffee*, 518 U.S. at 15 ("[W]e hold that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."). Thus, the identities of any licensed

---

[12] The Court recognizes that, by statute, Oregon state law follows the broad approach to waiver for the psychotherapist-patient privilege. Or. Evid. Code 504(4)(b)(A), Or. Rev. Stat. § 40.230(4)(b)(A) (stating that there is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient "[i]n any proceeding in which the patient relies upon the condition as an element of the patient's claim or defense"); *see also Hodges v. Oak Tree Realtors, Inc.*, 363 Or. 601, 611-12 (2018) (discussing Or. Evid. Code 504). As discussed previously, however, federal law, and not Oregon law, applies in this action. *See* n.2, *supra*.

psychotherapists or social workers consulted by a plaintiff, as well as the dates of any such consultations, are *not* privileged and must be disclosed if relevant.[13]

Second, a plaintiff generally does not need to present expert testimony to seek emotional distress damages from a jury. Many trial lawyers, however, present expert witnesses at trial even when not legally necessary simply because of the "aura of special reliability" that jurors "tend to affix" to an expert's opinion. *See generally* Charles R. Richey, *Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules Evidence in Civil and Criminal Jury Trials*, 154 F.R.D. 537, 541 (1994). When a plaintiff seeking damages for emotional injury presents an expert witness to support the plaintiff's claim for such damages, care must be taken to ensure that the plaintiff is not attempting unfairly to use the psychotherapist-patient privilege as both "a sword and a shield." As explained by the Second Circuit:

> [F]airness considerations arise when the party attempts to use the privilege both as "a shield and a sword." In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.

*In re Grand Jury Proceedings*, 219 F.3d at 182. Based on this principle, several conclusions reasonably follow, depending on whether the plaintiff's expert witness is a treating or non-treating expert.

---

[13] If a defendant seeks discovery relating to any consultation that a plaintiff had with a licensed psychotherapist or social worker that predates the events or conduct at issue in a pending lawsuit, the requesting party may need to show how any such consultation is relevant and does not unduly invade the privacy interests of the plaintiff. *See generally* Fed. R. Civ. P. 26(c)(1) (discussing protective orders).

When a plaintiff presents expert testimony from a non-treating psychotherapist on the issue of emotional injury, a court generally must determine whether the testifying expert is relying on any privileged communication, in whole or in part, to support that expert's opinion. If so, then fairness in the adversarial process demands that all relevant privileged communications to which that expert has been given access must be timely disclosed to the opposing party.[14]

On the other hand, when a plaintiff presents expert testimony from a treating psychotherapist regarding the plaintiff's emotional injuries, it may be impossible for all practical purposes for that witness fairly to segregate any privileged communications that support (or inform) the expert's opinions from those that do not. In that case, there should be a presumption that all communications between the patient and the treating psychotherapist, who is now serving as an expert witness as trial, must be disclosed to the opposing party. Indeed, it is difficult, if not impossible, to see how fair and meaningful cross-examination—upon which our adversarial system depends for its truth-seeking function—can occur without that information. Thus, if a plaintiff identifies a treating psychotherapist as a trial witness, all communications with that therapist must be timely disclosed. Similarly, if a treating expert, who will now also be a testifying expert, has had access to confidential communications between the plaintiff and another therapist that is part of the basis of the testifying expert's opinion, in whole or in part,

_____

[14] In the context of federal litigation, "timely disclosure" requires disclosure before trial with sufficient advance notice to allow the opposing party to obtain appropriate discovery from the plaintiff's expert to prepare for meaningful cross-examination, as well as to retain a rebuttal expert witness, if desired. Further, if otherwise privileged communications need to be revealed at or before trial, a court may require that they first be filed under seal and not generally disclosed to the public. A court also may establish procedures for the appropriate treatment of such personal information at trial.

then in all fairness all such relevant communications also must be timely disclosed to the opposing party.[15]

## D.  Resolving the Pending Motion

In Defendant's Interrogatory No. 17, Defendant asks Plaintiff to identify all healthcare professionals, including physicians, psychiatrists, psychologists, therapists, social workers, acupuncturists, chiropractors, physician assistants, nurses, occupational therapists, and any other healthcare professionals with whom Plaintiff consulted or from whom Plaintiff received or sought treatment relating to any injuries that Defendant allegedly caused. Because the psychotherapist-patient privilege only protects confidential communications, Plaintiff shall answer this interrogatory under oath. *See* Fed. R. Civ. P. 33(b)(3) (stating that an interrogatory shall be answered in writing under oath).

In Defendant's Request for Production No. 2, Defendant requests complete copies of Plaintiff's medical records, relating in any way to the injuries or conditions for which recovery is sought in this lawsuit, from all physicians or other healthcare providers who have treated, examined, or consulted with Plaintiff. The Court first notes that the physician-patient privilege is not recognized at federal common law; thus, it does not apply in a lawsuit based on federal question jurisdiction. *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977) ("The physician-patient evidentiary privilege is unknown to the common law."); *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) ("[T]he evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law, Fed. R. Evid. 501, which does not

---

[15] In addition, if a plaintiff seeks damages for future therapist expenses, discovery into prior treatment, including confidential communications, may be appropriate on the issue of whether the additional therapy is needed or is needed at the level being sought. Similarly, if a plaintiff or spouse seeks damages for loss of consortium, additional considerations may apply. The Court need not reach any of these issues at this time.

recognize a physician-patient (or hospital-patient) privilege. Rule 501 in terms makes federal common law the source of any privileges in federal-question suits unless an Act of Congress provides otherwise. We do not think HIPAA is rightly understood as an Act of Congress that creates a privilege.").[16] Accordingly, all responsive documents that do not involve a licensed psychotherapist or licensed social worker (or contain Plaintiff's confidential communications with any such professional) must be produced. Plaintiff, however, may provide these documents subject to an appropriate protective order entered by the Court.

Regarding Plaintiff's records relating to diagnosis or treatment from licensed psychotherapists or social workers, the Court has not finally determined whether Plaintiff has waived her psychotherapist-patient privilege. In this Opinion and Order, the Court finds that Plaintiff has not waived her psychotherapist-patient privilege *merely* by seeking damages for emotional distress allegedly caused by Defendant. In her Complaint, however, Plaintiff appears to disclose confidential communications from her psychotherapists or at least her own conclusions based on those communications. If Plaintiff chooses to continue down this path, that may well constitute a waiver. For the time being, the Court conditionally denies this aspect of Defendant's motion to compel.

Within 28 days (or such other time as the parties agree and the Court approves), Plaintiff shall disclose to Defendant whether Plaintiff: (1) intends to call any licensed psychotherapist or other similar expert witness at trial (whether treating or non-treating) to opine on Plaintiff's emotional injuries; and (2) intends to reveal during her own testimony at trial any otherwise confidential communications with any such professional. After Plaintiff discloses that

---

[16] Unlike federal law, Oregon state law, by statute, does recognize a physician-patient privilege. Or. Evid. Code 504-1(2), Or. Rev. Stat. § 40.235(2). As previously noted, however, federal law, and not Oregon law, applies in this action. *See* n.2, *supra*.

information to Defendant, the parties shall confer regarding what, if any, additional discovery may be needed to be produced consistent with this Opinion and Order. If the parties cannot resolve that question together, they may contact the Courtroom Deputy to request a conference with the Court.

Regarding Defendant's request for leave to issue subpoenas to Providence Medical Group, pursuant to 45 C.F.R. § 164.512(e)(1), for the two health care providers whom Plaintiff already has disclosed to Defendant, if those providers are medical providers and not licensed psychotherapists or social workers, that request is granted. If those providers, however, are licensed psychotherapists or social workers, Defendants' request is conditionally denied. Again, the parties shall confer further regarding the principles stated in this Opinion and Order and may contact the Courtroom Deputy if further assistance is needed from the Court. Finally, as previously noted, Plaintiff shall provide an appropriate privilege log within 28 days.

## CONCLUSION

As stated in this Opinion and Order, Defendant's Motion to Compel Health Records (ECF 10) is GRANTED IN PART, DENIED IN PART, AND CONDITIONALLY DENIED IN PART.

**IT IS SO ORDERED.**

DATED this 13th day of October, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge